UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

COREY C. TABOR, INDIVIDUALLY )
and as ADMINISTRATOR OF THE )
ESTATE OF BREANNA FOSTER and )
DAVID G. TAVARES, AS NATURAL )
PARENT AND GUARDIAN OF )
[      . ] )
                    *Plaintiffs*, )
                                            )
        v.                                  )        C.A. No.:
                                            )
THE MEMORIAL HOSPITAL           )        **JURY TRIAL DEMANDED**
and UNITED STATES OF AMERICA )
                    *Defendants*. )

## COMPLAINT

### Jurisdiction

1.      This Court has subject-matter jurisdiction over this action, pursuant to
28 U.S.C. § 1331, because plaintiffs' causes of action against defendant United States of
America arise under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) and §
2671, *et seq.*

2.      This Court has supplemental jurisdiction over all remaining state law
malpractice claims in this action pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in that all or a substantial part of the acts and omissions
forming the basis of these claims occurred in the District of Rhode Island.

4.      Plaintiffs have fully complied with the provisions of 28 U.S.C. § 2675 of the
Federal Tort Claims Act.  Plaintiffs mailed their claims to both the individual clinic ("The
East Bay Community Action Program Health Center") and United States Department of

Health and Human Services ("DHHS") on November 4, 2016. The claims were received for consideration on November 7, 2016 by DHHS Office of the General Counsel. *See Attachment No. 1, Confirmation of Receipt of FTCA Claims.* Plaintiffs' counsel provided to DHHS all requested documents. By letter dated March 15, 2017 (received by Plaintiffs' counsel on March 20, 2017), the claims were denied by the DHHS Office of General Counsel. *See Attachment No. 2, Denial of FTCA Claims.* Thus, this Complaint is timely filed in satisfaction of 28 U.S.C. § 2675(a).

### Parties

5.     Plaintiff Corey C. Tabor is a resident of Rhode Island and the father of Breanna Foster, who died on December 30, 2014 at the age of twenty-one (21). Plaintiff Tabor was appointed Administrator of the Estate of Breanna Foster on June 11, 2015, in the City of Warwick, Rhode Island. Plaintiff Tabor brings this civil action individually and pursuant to the provisions of R.I.G.L. § 10-7-1, *et seq.* and R.I.G.L. § 9-1-6, 7 in his capacity as the Administrator of the Estate of Breanna Foster.

6.     Plaintiff David G. Tavares is a resident of Rhode Island and the biological father of L    . T      L    T      is the biological minor son David Tavares and the decedent, Breanna Foster. Plaintiff David Tavares brings this civil action in his capacity as the natural parent and guardian of L       T

7.     Defendant The Memorial Hospital is a domestic non-profit corporation existing under the laws of the State of Rhode Island, with its principal place of business located in Pawtucket, Rhode Island. Defendant The Memorial Hospital has at all relevant times operated and maintained a medical and surgical hospital in Pawtucket, Rhode

Island providing obstetric and surgical medical services.

8.      Count II of plaintiffs' Complaint is brought against the United States of America, pursuant to the Federal Tort Claims Act (28 U.S.C. § 1346(b)), for monetary damages as compensation for the personal injuries to, and death of, Breanna C. Foster that were caused by the negligent medical care and evaluation provided to Breanna Foster by employees of the East Bay Community Action Program Health Center, including Dr. Ashley Lakin. and Dr. Heidi Radlinksi.

9.      The East Bay Community Action Program Health Center, located at 100 Bullocks Point Avenue, East Providence, Rhode Island is considered a community health center pursuant to the Federally Supported Health Centers Assistance Act of 1992, Public Law No. 102-501, 42 U.S.C. § 233(g), and this Act's 1995 amendment, Public Law No. 104-73.

10.     In the year 2014, the East Bay Community Action Program Health Center's agents/employees were considered to be employees of the United States of America for purposes of the FTCA.

11.     At all times described in paragraphs 13-53, the physicians, medical personnel, and/or other employees of East Bay Community Action Program Health Center in East Providence, Rhode Island were considered agents and/or employees of defendant United States of America for purposes of the FTCA.

12.     In rendering medical services to Breanna Foster, said agents/employees of defendant United States of America acted within the scope of their employment and with the permission of, and under the control and supervision of, defendant United States of

3

America.

13.    DHHS has acknowledged that plaintiffs' claims against East Bay Community Action Program Health Center is subject to the Federal Tort Claims Act. *See Attachment No. 1.*

#### Facts

14.    During her pregnancy in 2014, Breanna Foster was a patient of the East Bay Community Action Program Health Center.

15.    Ashley M. Lakin, D.O., a physician at the East Bay Community Action Program Health Center, treated Breanna Foster during her pregnancy and through December 2014.

16.    Dr. Lakin was, at all relevant times described in paragraphs 13-55, an employee of East Bay Community Action Program Health Center.

17.    Dr. Lakin was, at all relevant times described in paragraphs 13-55, considered an employee of the United State of America pursuant to the FTCA.

18.    As of December 10, 2014, Foster's estimated delivery date was December 21, 2014.

19.    On December 10, 2014, Dr. Michael Chen-Illamos, a Memorial Hospital employee, performed a sterile vaginal exam upon Foster and her cervix as being "closed, long, high, posterior, soft."

20.    On December 10, 2014, Dr. Lakin also examined Foster. The plan at that time was to continue to a natural, vaginal delivery.

4

21.     On December 16, 2014, Dr. Lakin performed a sterile vaginal exam upon Foster and it was determined that she was 0.5 centimeters dilated, with 50% effacement, and the fetal station was negative three.  The delivery plan remained the same.

22.     On December 22, 2014, Dr. Lakin examined Foster and the plan at that time remained the same.  A vaginal exam was again done at this time to determine whether Foster's cervix was ripening for delivery.

23.     On December 29, 2014, Foster was again examined by Dr. Lakin.  Following this examination, Dr. Lakin decided to admit Foster to The Memorial Hospital for cervical ripening and labor induction.

24.     At or about 5:57 p.m. on December 29, 2014, Foster was admitted to The Memorial Hospital.

25.     Dr. Lakin was recorded as Breanna's attending physician at The Memorial Hospital on December 29, 2014.

26.     Between 6:09 p.m. and 8:07 p.m., Dr. Karl Dietrich ("Dr. Dietrich") performed a sterile vaginal exam on Foster and it was determined that she was 2 centimeters dilated, with 70% effacement, and the fetal station was negative three.

27.     In his "Assessment and Plan," Dr. Dietrich noted "Bishop's score 2," "Misoprostol 25mcg intravaginally," "If contracting >3 per 10 minutes, will repeat cervical exam prior to 4 hours," "If contracting <3 per 10 minutes, will repeat misoprostol at 4 hours," and "Will continue to assess need for pitocin."

28.     Dr. Dietrich noted that he discussed Foster's condition at this time with Dr. Heidi Radlinski-Schneider ("Dr. Radlinski"), M.D.

5

29.     Dr. Dietrich was an employee of The Memorial Hospital on December 29, 2014.

30.     Dr. Radlinski was an employee of the East Bay Community Action Program Health Center on December 29-30, 2014.

31.     Dr. Radlinski was, on December 29-30, 2014, considered an employee of the United State of America pursuant to the FTCA.

32.     At some point during the night of December 29, 2014, Dr. Radlinski became the attending physician responsible for supervising Foster's labor and delivery.

33.     At or about 9:20 p.m., Foster was administered 25 micrograms of Misoprostol (Cytotec) intravaginally by Jason Khan, D.O.

34.     Dr. Jason Kahn was an intern as of December 29-30, 2014 and employed by The Memorial Hospital.

35.     At or about 12:00 a.m. on December 30, 2014, Foster's contractions were "2-6" in "Frequency (mins)."

36.     At or about 2:00 a.m., Foster's contractions were "3-4" in "Frequency (mins)."

37.     Between 2:05 a.m. and 2:15 a.m., Foster was examined by Dr. Kahn, who determined that Foster was 3 centimeters dilated, with 80% effacement, and recorded "high."

38.     After examining Foster, Dr. Kahn spoke with Dr. Radlinski to inform her of Foster's vaginal exam and her contraction pattern.

6

39.     Dr. Radlinski and Dr. Kahn together agreed to administer a second dose of Misoprostol (Cytotec) intravaginally to Foster.

40.     At or about 2:15 a.m., Foster was administered a second intravaginal dose of Misoprostol (Cytotec) by Dr. Kahn.

41.     Between 2:15 a.m. and 4:20 a.m., Foster's contraction pattern demonstrated uterine hyperstimulation.

42.     Between 2:15 a.m. and 4:20 a.m. Foster's fetus developed bradycardia.

43.     At 4:20 a.m. Dr. Radlinski was called to attend Foster's delivery.

44.     At or about 4:47 a.m. Foster vaginally delivered her son, L        T

45.     At 4:48 a.m. Dr. Radlinski arrived in Foster's room.

46.     At 4:48 a.m. Dr. Katherine Jarrell was also present in Foster's room.

47.     At or about 4:52 a.m., Foster exhibited signs of postpartum obstetrical hemorrhage.

48.     Foster's hemorrhage was caused by multiple lacerations to her vagina and cervix.

49.     Foster's lacerations were caused by the rapid delivery of her son.

50.     At or about 5:55 a.m., blood products were first ordered by Foster's treating physicians or staff.

51.     At or about 6:15 a.m., Foster received her first transfusion of blood.

52.     At or about 6:15 a.m., Dr. Katherine Jarrell ordered fresh frozen plasma and noted her concern that Foster was suffering from disseminated intravascular coagulation ("DIC").

53.     Dr. Jarrell was an employee of The Memorial Hospital on December 29-30, 2014.

54.     At or about 9:25 a.m., Foster was transferred to the intensive care unit at The Memorial Hospital in critical condition.

55.     At or about 4:44 p.m., Foster was transferred to Rhode Island Hospital for further management.

56.     At or about 6:00 p.m., Foster was pronounced dead at Rhode Island Hospital.

57.     Foster's death was caused by the multiple lacerations to her vagina and cervix suffered during the delivery of her son.

COUNT I
Defendant The Memorial Hospital

58.     Paragraphs 1 through 57 are hereby incorporated in this Count I by reference as if fully set forth at length herein.

59.     On or about December 29, 2014 and continuing thereafter, defendant The Memorial Hospital, by and through its agents, servants, and/or employees, including but not limited to Dr. Dietrich, Dr. Kahn, Dr. Jarrell, and other physicians, physicians-in-training, physician assistants, nurses and other health care providers, undertook for valuable consideration to provide medical, obstetrical, and other health care treatment to Breanna Foster.

60.     As of December 29, 2014, it became and was the duty of defendant The Memorial Hospital, by and through these agents, servants, and/or employees, to exercise

that degree of care and diligence in treating Breanna Foster as was ordinarily possessed of individuals of the same specialty or rendering similar services, acting, in the same or similar circumstances.

61.     Nevertheless, defendant The Memorial Hospital, by and through its agents, servants, and/or employees, failed to exercise that degree of skill and diligence in that it negligently diagnosed and treated Breanna Foster during her labor and delivery on December 29-30, 2014 thereby causing her to become afflicted with severe personal injuries, extreme pain and suffering, and ultimately death on December 30, 2014.

62.     As a direct and proximate result of the negligence of the agents, servants, and/or employees of defendant The Memorial Hospital, Breanna Foster suffered personal injury, great pain of body, nerves, and nervous system, extreme conscious pain and suffering, and ultimately death on December 30, 2014.  The Administrator of her Estate claims "survival" damages pursuant to R.I.G.L. § 9-1-6 and § 9-1-7.

63.     The Estate of Breanna Foster also seeks all available damages pursuant to the Rhode Island Wrongful Death Act R.I.G.L. § 10-7-1 *et seq.* including § 10-7-1.1, 2, 5, 6 and 7.

64.     As a direct and proximate result of the negligence of defendant The Memorial Hospital and the resulting injuries and death of Breanna Foster, her legal beneficiary has suffered pecuniary damages recoverable pursuant to R.I.G.L. § 10-7-1, *et seq.*

65.     As a direct and proximate result of the negligence of defendant The Memorial Hospital, plaintiff Corey C. Tabor, individually, has suffered and will in the

9

future suffer a loss of his daughter's society and companionship and claims damages recoverable pursuant to R.I.G.L. § 10-7-1.2(c).

66.     As a direct and proximate result of the negligence of defendant The Memorial Hospital and the resulting injuries and death of Breanna Foster, L
T       , minor child of Breanna Foster, has suffered and will in the future suffer the loss of his mother's society, love, guidance, and companionship and claims damages pursuant to R.I.G.L. § 10-7-1.2(b).

WHEREFORE, plaintiffs Corey C. Tabor, individually and as Administrator of the Estate of Breanna Foster, and David G. Tavares in his capacity as the natural parent and guardian of L        T       , minor child of Breanna Foster, demand judgment against defendant The Memorial Hospital for compensatory damages, plus interest and costs.

**COUNT II**
**Defendant United States of America**

67.     Paragraphs 1 through 66 are hereby incorporated in this Count II by reference as if fully set forth at length herein.

68.     On or about July 25, 2013 and thereafter, the East Bay Community Action Program Health Center, by and through its agents, servants, and/or employees, including, but not limited to Dr. Radlinski and Dr. Lakin, undertook for valuable consideration to provide medical, obstetrical, and other health care treatment to Breanna Foster.

69.     It then and there became the duty of East Bay Community Action Program Health Center, by and through its agents, servants, and/or employees, to exercise that

degree of care and diligence in treating Breanna Foster as was ordinarily possessed of individuals of the same specialty or rendering similar services, acting, in the same or similar circumstances.

70.    Nevertheless, East Bay Community Action Program Health Center, by and through its agents, servants, and/or employees, failed to exercise that degree of skill and diligence in that it negligently diagnosed and treated Breanna Foster during her labor and delivery on December 29-30, 2014 thereby causing her to become afflicted with severe personal injuries, extreme pain and suffering, and ultimately death on December 30, 2014.

71.    As a direct and proximate result of the negligence of the agents, servants, and/or employees of East Bay Community Action Program Health Center, Breanna Foster suffered personal injury, great pain of body, nerves, and nervous system, extreme conscious pain and suffering, and ultimately death on December 30, 2014. The Administrator of her Estate claims "survival" damages pursuant to R.I.G.L. § 9-1-6 and § 9-1-7.

72.    The Estate of Breanna Foster also seeks all available damages pursuant to the Rhode Island Wrongful Death Act R.I.G.L. § 10-7-1 *et seq.* including § 10-7-1.1, 2, 5, 6 and 7.

73.    As a direct and proximate result of the negligence of East Bay Community Action Program Health Center, by and through its agents, servants, and/or employees, and the resulting injuries and death of Breanna Foster, her legal beneficiaries have suffered pecuniary damages recoverable pursuant to R.I.G.L. § 10-7-1, *et seq.*

11

74. As a direct and proximate result of the negligence of East Bay Community Action Program Health Center, by and through its agents, servants, and/or employees, plaintiff Corey C. Tabor, individually, has suffered and will in the future suffer a loss of his daughter's society and companionship and claims damages recoverable pursuant to R.I.G.L. § 10-7-1.2(c).

75. As a direct and proximate result of the negligence of East Bay Community Action Program Health Center, by and through its agents, servants, and/or employees, and the resulting injuries and death of Breanna Foster, L    T    , minor child of Breanna Foster, has suffered and will in the future suffer the loss of his mother's society and companionship and claims damages pursuant to R.I.G.L. § 10-7-1.2(b).

76. The United States of America is liable for the negligent actions of East Bay Community Action Program Health Center and its agents, servants, and employees.

WHEREFORE, plaintiffs Corey C. Tabor, individually and as Administrator of the Estate of Breanna Foster, and David G. Tavares in his capacity as the natural parent and guardian of L    . T    , minor child of Breanna Foster, demand judgment against defendant United States of America for compensatory damages, plus interest and costs.

### Demand for Jury Trial

Plaintiff demands a trial by jury and designates Michael P. Quinn, Jr., Esq. as lead trial counsel pursuant to LR Gen 206(d).

Plaintiffs also designate, pursuant to LR Gen 206(c)(1), Attorney Quinn as counsel to whom notice from the court should be sent.

PLAINTIFFS,

COREY C. TABOR, As Administrator of
The Estate of Breanna Foster;
COREY C. TABOR, Individually; and
DAVID G. TAVARES, as Natural Parent
And Guardian of L       T

By their Attorneys
Decof, Decof & Barry
One Smith Hill
Providence, RI 02903
Telephone:  (401) 272-1110
Facsimile:  (401) 351-6641
Email:  mpq@decof.com; tjg@decof.com


_____/s/ Michael P. Quinn, Jr._____
Michael P. Quinn, Esq.      Bar No. 7514
Timothy J. Grimes, Esq.     Bar No. 8820

Dated:  May 3, 2017

ATTACHMENT 1



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Office of the General Counsel
General Law Division, CELB

330 C Street, S.W.
Switzer Building, Suite 2600
Washington, D.C. 20201

November 14, 2016

Michael P. Quinn, Jr., Esquire
DECOF, DECOF & BARRY
One Smith Hill
Providence, Rhode Island 02903

> RE:   L       T.      , a minor and son of Breanna Foster,
> by and through his natural father, David G. Tavares
> RE:   2017-0095
>
> Cory C. Tabor, natural father of Breanna Foster
> RE:   2017-0096
>
> The Estate of Breanna Foster, by and through Cory C.
> Tabor, the Estate Representative    RE:   2017-0097

Dear Mr. Quinn:

This will acknowledge receipt of your clients' claims (3) relating to the wrongful death of Breanna Foster on December 30, 2014, which resulted from negligent medical care provided by alleged employees of the East Bay Community Action Program Health Center, in Providence, Rhode Island, before and following the birth of her son, L    . T.    . Your clients' claims, as well as medical records, were received in this office on November 7, 2016, for consideration and reply.

The Federally Supported Health Centers Assistance Act of 1992, Public Law No. 102-501, 42 U.S.C. § 233(g)(k), and the amended Federally Supported Health Centers Assistance Act of 1995, Public Law No. 104-73, 42 U.S.C. § 201, provides that the **Federal Tort Claims Act** is the exclusive remedy for injuries, including death, caused by **employees of a deemed Community Health Center** which occurred on or about January 1, 1993, **or when the Health Center was deemed eligible for coverage.**

In order to properly evaluate your clients' claims for damages, please forward the following substantiating evidence, directly to the address above:

- 2 -

1)   One copy of all medical and funeral bills;

2)   Evidence of the appointment of the Administrator or
     the Executor of the Estate;

3)   Evidence substantiating any economic loss claimed
     as damages;

4)   Full names, addresses, birth dates, kinship, and
     marital status of the decedent's survivors, including
     identification of those survivors who were dependent
     for support upon the decedent at the time of her
     death;

5)   Degree of support afforded by the decedent to
     each survivor dependent upon her for support
     at the time of her death;

6)   Any other evidence or information which may
     have a bearing on the Health Center and/or the
     employee(s) involved for the death claimed;

*As all mail delivered to federal government buildings is x-
rayed/radiated, and **may be damaged** during the process, please
forward all evidence via **FedEx, UPS or DHL, most importantly, CD's.**

Upon receipt of the requested evidence, we will proceed with our
investigation into this matter.  A medical review will be performed
to assess the merits of your clients' claims.  When the review
process has been completed, you will be notified in writing.

**However, should the six month statute expire before the completion
of the medical review, you may consider the claims deemed denied
and file suit in the appropriate U.S. District Court (45 C.F.R. §
35.2(b) and 28 U.S.C. § 2675(a))**

**PLEASE BE ADVISED THAT STATUS INFORMATION ON CLAIMS IN THIS OFFICE
IS UNAVAILABLE UNTIL AFTER THE SIX MONTH STATUTE HAS EXPIRED.**

Yours truly,

Linda A. Vincent
Paralegal Specialist
Claims Office

# ATTACHMENT 2



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

OFFICE OF THE GENERAL COUNSEL
General Law Division, CELB

330 C Street, S.W.
Switzer Building, Suite 2600
Washington, D.C. 20201

CERTIFIED — RETURN
RECEIPT REQUESTED

MAR 15 2017

Michael P. Quinn, Jr., Esquire
Decof, Decof & Barry
One Smith Hill
Providence, Rhode Island 02903

RE:   Administrative tort claims: L     T    , a minor and son of
      Breanna Foster, by and through his natural father, David G.
      Tavares                                                2017-0095

      Cory C. Tabor, natural father of Breanna Foster    2017-0096

      The Estate of Breanna Foster, by and through Cory C. Tabor,
      the Estate Representative                              2017-0097

Dear Mr. Quinn:

On November 7, 2016, you filed three administrative tort claims under the
Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), 2401(b), 2671-2680,
on behalf of your clients, David G. Tavares and Cory C. Tabor, alleging,
*inter alia,* that, Breanna Foster received negligent medical care by
employees at the East Bay Community Action Program Health Center, in
Providence, Rhode Island, before and following the birth of her son, L
   T    , resulting in her death on December 30, 2014.

The FTCA authorizes the settlement of any claim of money damages against
the United States for, *inter alia,* injury or death caused by the
negligent, or wrongful, act or omission of any employee of the Federal
Government, while acting within the scope of employment.   Under the FTCA,
said act or omission must be such that the United States, if a private
person, would be liable to the claimant in accordance with the law of the
place where the act or omission occurred.   28 U.S.C. § 2672.

This letter constitutes the notice of final determination on these claims,
as required by 28 U.S.C. §§ 2401(b), 2675(a).   Your clients' administrative
tort claims are denied.   The evidence fails to establish that the death of
Breanna Foster was due to the negligent or wrongful act or omission of a
federal employee acting within the scope of employment.

If your clients are dissatisfied with this determination, they may:

1. file a written request with the agency for reconsideration of the final determination denying the claim within six (6) months from the date of mailing of this determination (20 C.F.R.§ 18 14.16); or

Michael P. Quinn, Jr., Esquire
2017-0095, 0096 & 0097
Page 2

1. file a written request with the agency for reconsideration of the
   final determination denying the claims within six (6) months from
   the date of mailing of this determination (28 C.F.R. § 14.9); or

2. file suit against the United States in the appropriate federal
   district court within six (6) months from the date of mailing of
   this determination (28 U.S.C. § 2401(b)).

In the event your clients request reconsideration, the agency will review
the claims within six (6) months from the date the request is received.
If the reconsidered claims are denied, your clients may file suit within
six (6) months from the date of mailing of the final determination.

Sincerely,

William A. Biglow

William A. Biglow
Deputy Associate General Counsel
Claims and Employment Law Branch